FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 15 2012

JAMES N. HATTEN Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTH DISTRICT OF GEORGIA

ATLANTA DIVISION



| | |
|---|---|
| JANET MITCHELL ADAMS, <br> Plaintiff, | ) CIVIL ACTION <br> ) <br> ) FILE NO.: 1 12-CV-2067 |
| Vs | ) |
| ROBERT JERRY COOK and <br> SOUTHERN STATES SAVINGS <br> AND RETIREMENT PLAN, <br> Defendants, | ) <br> ) <br> ) <br> ) JURY DEMANDED |

**COMPLAINT FOR UNPAID OVERTIME WAGES, LIQUIDATED DAMAGES, ATTORNEY FEES AND COURT COSTS UNDER FLSA, COMPLAINT FOR BREACH OF FIDUCIARY OBLIGATION OWING TO PLAINTIFF, BREACH OF CONTRACT, EXEMPLARY DAMAGES, ATTORNEY FEES, AND COURT COSTS, CREATING A HOSTILE WORK ENVIRONMENT**

### PRELIMINARY STATEMENT

COUNT ONE of this Complaint is an action for overtime wages under § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201-219, to recover

1

unpaid overtime wages, liquidated damages for failure to pay such wages and reasonable attorneys fees, and court costs.

Count Two of this Complaint is a claim for a breach of the fiduciary relationship between Plaintiff and both Defendants, in failing to provide and secure pension benefits and insurance benefits to the Plaintiff, under the Participation Agreement; and, to recover the damages Plaintiff suffered, exemplary damages, attorney fees and court costs.

The third Count of the Complaint is a claim by the Plaintiff against the Defendants based upon the Defendants creating a hostile work environment in which the Plaintiff worked.

## FACTUAL ALLEGATIONS

1.  On or about the 8th day of October 2008, the Plaintiff began her initial employment with SOUTHERN STATES. She was a temporary, or casual, employee and made $100 per day for her assigned task.

2.  The Plaintiff concluded that temporary assignment, but following a personnel change at SOUTHERN STATES, she was re-employed by SOUTHERN

STATES on February 2, 2009 as a regular employee at the rate of $12.50 per hour. Plaintiff's rate of pay increased to $15 per hour from February 2, 2010, until February 1, 2011, when she was placed on salary. Plaintiff continues doing the same job for SOUTHERN STATES, and has for more than three years.

## JURISDICTION AND VENUE

3. This court has jurisdiction of this case under the FLSA, and venue is proper pursuant to 28 U.S.C §1391(b).

## PARTIES

4. The Defendant, SOUTHERN STATES, is a trust fund for retirement benefits primarily for union employees. Plaintiff and one other employee are the current sole employees under the supervision of Defendant ROBERT JERRY COOK, the administrator of the trust fund.

5. The Plaintiff, JANET MITCHELL ADAMS, is a 50 year old woman who has been employed as a regular fulltime employee by the Defendant, SOUTHERN STATES SAVINGS AND RETIREMENT PLAN (hereinafter referred to as: SOUTHERN STATES), for more than three years.

3

6. Defendant SOUTHERN STATES is a collectively bargained (Taft-Hartley) multi-employer benefit plan. The Plan is designed to be operated in compliance with the Employee Retirement Income Security Act of 1974 (ERISA).

7. The Defendant ROBERT JERRY COOK (hereinafter referred to as COOK) is the administrator of SOUTHERN STATES, and supervisor of Plaintiff JANET MITCHELL ADAMS.

## COUNT ONE

## CLAIM UNDER FLSA

8. During her first two years of fulltime employment, before she was placed on salary, Plaintiff consistently worked more than 40 hours a week. During the period beginning approximately February 9, 2009 until approximately February 2, 2010 Plaintiff worked approximately 240 hours in excess of 40 hours per week. For the next year of her employment, the Plaintiff worked approximately 842 hours in excess of 40 hours a week. Notwithstanding the FLSA requirement for overtime pay, Plaintiff was paid only straight time, never paid time and a half as required by (FLSA).

9. Plaintiff shows that she is entitled to be paid overtime wages, pursuant to the FLSA, for all hours in excess of forty hours per week for the first two years of her employment.

10. Plaintiff further shows that Defendant's failure to pay overtime wages to the Plaintiff was willful and intentional, under FLSA law, and Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime wages, plus attorney fees and court costs

11. Defendant COOK intentionally and wrongfully misclassified Plaintiff as a "temporary employee." (Plaintiff on occasion characterized Plaintiff as: "independent contract worker," "temporary worker/employee," "Temp. worker," "TEMP. OFFICE HELP," "OFFICE HELP," "TEMPORARY OFFICE HELP, "OFFICE WORK," as well as other terms),arguably to save his employer, SOUTHERN STATES, money, but with total disregard for Plaintiff's income needs, denying Plaintiff earned overtime wages.

12. Plaintiff shows that when she questioned Defendant COOK about the overtime wages to which she was entitled, COOK told her that if she pushed that issue she would no longer even have a job with SOUTHERN STATES.

13. Plaintiff shows that this conduct on behalf of Defendant COOK, individually and as Administrator of Defendant SOUTHERN STATES, is intentional, willful, malicious, and wanton; and, punitive damages should be awarded.

## COUNT TWO

## BREACH OF FIDUCIARY OBLIGATION

14. Plaintiff re-alleges and re-affirms paragraphs 1. - 13. of this Complaint, as if fully set forth herein.

15. At all times pertinent to the facts in this Complaint, Defendant SOUTHERN STATES was a party to a PARTICIPATION AGREEMENT with CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND HEALTH AND WELFARE FUND that provided retirement and health benefits to employees of SOUTHERN STATES, as well as other companies. SOUTHERN STATES, by virtue of the agreement, was bound by the terms of that

agreement. An unsigned copy of that agreement is attached hereto as Exhibit "A" and made a part hereof.

16. The PARTICIPATION AGREEMENT provides, among other things, that the Employer (SOUTHERN STATES): (shall) contribute to the Pension Fund, on behalf of Covered Employees, at specifically scheduled weekly rates.

17. Notwithstanding the plain language of those documents, the Defendants failed and refused to make any contributions for the Plaintiff until two and one-half years subsequent to her employment, after Plaintiff became a salaried employee.

18. Paragraph 9. of the PARTICIPATION AGREEMENT provided that, "on or before the 15th day of each month, the Employer (must) report to the Fund(s) any change in the Covered Employee workforce which occurred during the prior month." Notwithstanding 24 reporting opportunities, the Defendants did not make any contributions for the benefit of the Plaintiff.

19. Plaintiff shows that Defendant COOK intentionally, knowingly, and designedly misclassified her as a "temporary employee" in an effort to hide her

7

employment, and avoid making contributions to the aforedescribed benefit plans on her behalf. Defendant COOK intentionally and wrongfully, but inconsistently, misclassified Plaintiff as a "temporary employee," "independent contract worker," "temporary worker-employee," "Temp. worker," "TEMP. OFFICE HELP," "OFFICE HELP," "TEMPORARY OFFICE HELP, "OFFICE WORK," as well as other terms.

20. Furthermore, Defendant COOK directed Plaintiff to refrain from discussing her employment with certain and specific third parties in order to continue to hide her employment, and her entitlement and qualifications for benefits.

21. When Plaintiff specifically questioned Defendant COOK concerning her right to receive benefits under the Participation Agreement, COOK responded to her that that if she pushed the issue she would no longer have her job.

22. The failure of SOUTHERN STATES to make contributions to Plaintiff's pension account, as it was legally required to do for the two-plus year period that Plaintiff was entitled, specifically because of the intentional acts of Defendant/ Administrator COOK, deprived Plaintiff of pension contributions that should have

8

been made to her account, and caused her presently to be at least two years behind in her retirement financial planning.

23. In addition to putting Plaintiff two years behind on her retirement benefits program, Defendant's failure to contribute to Defendant's health & welfare fund deprived her of the health insurance program she was entitled to enjoy for the subject period. Accordingly, Plaintiff was required to pay her own health insurance program at a considerable expense to her.

24. The acts of the Defendants, in hiding Plaintiff's employment from the pension provider, failing to enroll Plaintiff in the subject pension programs; and, failing to add her as a covered employee, were intentional, willful, wanton, and in total and reckless disregard for her welfare, for which the Defendants should be required to pay exemplary damages, attorney fees, and court costs.

25. Even more egregious was the conduct of Defendant Cook. Not only was he guilty of the conducted alleged in the preceding paragraph, his threatening remarks regarding Plaintiff's job are more reprehensible, and he should be required to pay an extra measure of exemplary damages.

26. The Defendants were warned by the trust fund's counsel that what they were doing with respect to the Plaintiff's entitlement to benefits was not proper.

## COUNT THREE

## HOSTILE WORK ENVIRONMENT

27. Plaintiff re-alleges and re-affirms paragraphs 1. - 26. as if fully set forth herein.

28. Plaintiff is the junior employee in an office that is staffed by another female employee, and the office supervisor, the defendant ROBERT JERRY COOK.

29. Plaintiff shows that defendant COOK maintains an office that is conducive to creation of a hostile and abusive work environment.

30. Not only does COOK continually visit pornographic sites, but customarily allows the pornographic photos to be exposed on his computer monitor, often when

he is not even in his office, but knowing the two female employees have general needs to be in his office

31. A business associate frequently visits the subject office. He commonly uses the "N" word, though Plaintiff has made it abundantly clear that she finds the word oppressive.

32. COOK has a business associate who often describes parts of the Plaintiff's body with inappropriate terms, notwithstanding Plaintiff has asked COOK to tell him to desist.

33. COOK has failed to take remedial action against the third member of the defendant's office staff from smoking in the office's outside doorway and allowing smoke to be blown back into the office.

34. The atmosphere in the subject office is severe and pervasive, and has negatively impacted on the Plaintiff.

35. Plaintiff filed a charge against the Defendants citing among other issues, those enumerated in previous paragraphs. Evidence of that claim is attached hereto as Exhibit "B" hereto, and made a part hereof

## PLAINTIFF'S CLAIM FOR RELIEF

Wherefore, Plaintiff prays:

a.) That Plaintiff have a trial by jury on the issues of fact;

1.) That pursuant to the FLSA.

b.) She recover from the Defendant, SOUTHERN STATES, accrued and unpaid overtime wages;

c.) She recover from SOUTHERN STATES liquidated damages in an amount equal to the overtime Wages;

d.) She recover attorney fees, in the reasonable amount determined by the court;

e.) That she recover her costs of court.

2.) That for Defendants' breach of their fiduciary obligations, and breach of contract;

f.) She recover general damages based upon SOUTHERN STATES and Defendant COOK's breach of fiduciary and contractual relationship.

g.) She recover of the Defendants the reasonable damages she is entitled for their failure to pay retirement pension benefits to compensate her for two years of lost benefits;

h.) She recover of the Defendants for their failure to pay her health insurance benefits;

i.) She recover exemplary damages from the Defendants, in an amount determined by the court;

j.) She recover additional exemplary damages from Defendant COOK for his willful and wanton conduct;

k.) And, that she recover attorney fees and court costs against the Defendants for their reckless disregard in breaching their fiduciary relationship;

3.) That for Defendants' breach of their fiduciary obligations, and breach of contract;

l.) That Plaintiff recover damages against the Defendants for their permitting a hostile work environment; and,

m.) For such other relief the court may deem just and proper.

GENE BURKETT, P.C.

June 15, 20012

GENE BURKETT
Attorney for Plaintiff
Georgia Bar No.: 095750

2641 Westwood Drive
Conyers, GA 30094
770-483-2561



# PARTICIPATION AGREEMENT

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
PENSION FUND/HEALTH AND WELFARE FUND
9377 WEST HIGGINS ROAD
ROSEMONT, ILLINOIS 60018-4938
PHONE: (847) 518-9800

**ACCOUNT NUMBER:** _____

**THIS AGREEMENT** sets forth the terms under which the Employer will participate in the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and/or the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health and Welfare Fund") in accordance with its collective bargaining agreement with the Union covering the following job classification(s): _____
_____
and any other job classification covered by the collective bargaining agreement.

1. The Union and Employer agree to be bound by the Trust Agreement(s) of the Pension Fund and/or the Health and Welfare Fund and all amendments subsequently adopted as well as all rules and regulations presently in effect or subsequently adopted by the Trustees of the Fund(s) and accept the respective Employer and Employee Trustees and their successors

2. The Employer shall contribute to the Pension Fund for each Covered Employee at the following rates:

   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____

3. The Employer shall contribute to the Health and Welfare Fund for each Covered Employee at the following rates:

   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____
   Effective Date: _____   Rate: _____

4. Contribution rate changes after the last Effective Date set forth in paragraphs 2 and 3 shall be determined by each new collective bargaining agreement and such rate changes shall be incorporated into this Agreement. The parties may execute an interim agreement establishing contribution rates during the periods when a new collective bargaining agreement is being negotiated. In the absence of an interim agreement, the contribution rate required to be paid after termination of a collective bargaining agreement and prior to either the execution of a new collective bargaining agreement or the termination of this Agreement, shall be the rates in effect on the last day of the terminated collective bargaining agreement. However, the Trustees reserve the right to reduce benefit levels if the contribution rate is or becomes less than the then published rate for the applicable benefit plan or class.

5. This Agreement and the obligation to pay contributions to the Fund(s) will continue after the termination of a collective bargaining agreement except no contributions shall be due during a strike unless the Union and the Employer mutually agree in writing otherwise. This Agreement and the Employer's obligation to pay contributions shall not terminate until a) the Trustees decide to terminate the participation of the Employer and provide written notice of their decision to the Employer specifying the date of termination of participation or b) the Employer is no longer obligated by a contract or statute to contribute to the Fund(s) and the Fund(s) have received a written notice directed to the Fund(s)' Contracts Department at the address specified above sent by certified mail with return receipt requested which describes the reason why the Employer is no longer obligated to contribute or c) the date the NLRB certifies the result of an election that terminates the Union's representative status or d) the date the Union's representative status terminates through a valid disclaimer of interest. In the event the Employer participates in both the Pension Fund and the Health and Welfare Fund and the termination referred to in a) or b) relates to only one Fund, then this Agreement shall remain in effect with respect to the other Fund. In the event an NLRB election or disclaimer of interest referred to in c) or d) relates to only part of the bargaining unit, this Agreement shall remain in effect with respect to the remainder of the bargaining unit.

-1-

6.      When a new collective bargaining agreement is signed or the Employer and the Union agree to change the collective bargaining agreement, the Employer shall promptly submit the entire agreement or modification to the Fund(s)' Contracts Department by certified mail (return receipt requested) at the address specified above. Any agreement or understanding which affects the Employer's contribution obligation which has not been submitted to the Fund(s) as required by this paragraph, shall not be binding on the Trustees and this Agreement and the written agreement(s) that has been submitted to the Fund(s) shall alone remain enforceable. The following agreements shall not be valid: a) an agreement that purports to retroactively eliminate or reduce the Employer's statutory or contractual duty to contribute to the Fund(s), b) an agreement that purports to prospectively reduce the contribution rate payable to the Pension Fund or c) an agreement that purports to prospectively eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement that has been accepted by the Pension Fund.

7.      For purposes of this Agreement, the term "Covered Employee" shall mean any full-time or part-time employee covered by a collective bargaining agreement requiring contributions to the Fund(s) and includes casual employees (i.e. short term employees who work for uncertain or irregular duration) except a casual employee shall not be a Covered Employee with respect to the Health and Welfare Fund if the collective bargaining agreement explicitly excludes casual employees from participation in the Health and Welfare Fund. Covered Employee shall not include any person employed in a managerial or supervisory capacity or any person employed for the principal purpose of obtaining benefits from the Fund(s).

8.      The Employer agrees to remit contributions on behalf of each Covered Employee for any period he/she receives, or is entitled to receive, compensation (regardless of whether the employment relationship is terminated), including show up time pay, overtime pay, holiday pay, disability or illness pay, layoff/severance pay, vacation pay or the payment of wages which are the result of any National Labor Relations Board proceeding, grievance/arbitration proceeding or other legal proceeding or settlement. If the collective bargaining agreement states that contributions shall not be due on newly hired Covered Employees for a specified waiting period, no contributions shall be due until the Covered Employee completes the specified waiting period. If required by the applicable collective bargaining agreement, contributions shall also be made to the Fund(s) on behalf of any Covered Employee who is not working due to illness or injury even if the Covered Employee is not entitled to compensation. The Employer shall pay any contributions that would have otherwise been paid on any Covered Employee who is a re-employed service member or former service member but for his or her absence during a period of uniformed service as defined at 32 C.F.R. §104.3.

9.      On or before the 15th day of each month, the Employer must report to the Fund(s) any change in the Covered Employee workforce (including, but not limited to new hires, layoffs or terminations) which occurred during the prior month and must pay all contributions owed for the prior month. In the event of a delinquency, a) the Employer shall be obligated to pay interest on the monies due to the Fund(s) from the date when payment was due to the date when the payment is made, together with all expenses of collection incurred by the Fund(s), including, but not limited to attorneys' fees and costs and b) at the option of the Trustees or their delegated representative the payment of contributions that accrue after the Employer has become delinquent shall be accelerated so that the contributions owed for each calendar week (Sunday through Saturday) shall be due on the following Monday. If the Employer fails to report changes in the covered workforce on time, the Employer must pay the contributions billed by the Health and Welfare Fund regardless of actual terminations, leaves of absence, layoffs or other changes in the workforce. The Trustees reserve the right to terminate the participation of any Employer that fails to timely pay required contributions.

10.     The Employer shall provide the Trustees with access to its payroll records and other pertinent records when requested by the Fund(s). If litigation is required to either obtain access to the Employer's records or to collect additional billings that result from the review of the records, all costs incurred by the Fund(s) in conducting the review shall be paid by the Employer and the Employer shall pay any attorneys' fees and costs incurred by the Fund(s).

11.     The Trustees shall not be required to submit any dispute concerning the Employer's obligation to pay contributions to any grievance/arbitration procedure set forth in any collective bargaining agreement.

12.     The Employer acknowledges that it is aware of the Fund(s)' adverse selection rule (including Special Bulletin 90-7) and agrees that while this Agreement remains in effect, it will not enter into any agreement or engage in any practice that violates the adverse selection rule.

13.     This Agreement shall in all respects be construed according to the laws of the United States. In all actions taken by the Trustees to enforce the terms of this Agreement, including actions to collect delinquent contributions or to conduct audits, the Illinois ten year written contract statute of limitations shall apply. The Employer agrees that the statute of limitations shall not begin to accrue with respect to any unpaid contributions until such time as the Fund(s) receive actual written notice of the existence of the Employer's liability.

14.     This Agreement may not be modified or terminated without the written consent of the Fund(s). To the extent there exists any conflict between any provisions of this Participation Agreement and any provisions of the collective bargaining agreement, this Participation Agreement shall control.

**IN WITNESS WHEREOF**, said Employer and Union have caused this Instrument to be executed by their duly authorized representatives, the day and year first above written.

_____    Local Union No _____
Employer Name

_____    _____
Representative Signature                  Representative Signature

_____    _____
Printed Name and Title                    Printed Name and Title

_____    _____
Date                                      Date

_____
_____
Complete Address of Employer

_____
Telephone Number        Fax Number

_____
Federal Employer Identification Number

If the Employer is signatory to a National or Group Contract, indicate the name of such Contract:
_____

Is the Employer an itinerant construction company working on a project or on a seasonal basis?   Yes _____   No _____

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 410-2012-04350 |
| | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Janet M. Adams | (770) 833-1668 | 07-08-1961 |

Street Address: 3600 Blackberry Lane, S.E., Conyers, GA 30094

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| SOUTHERN STATES SAVINGS & RETIREMENT PLAN | Under 15 | (770) 922-3599 |

Street Address: 976 Sigman Road, Suite 800, Conyers, GA 30013

DISCRIMINATION BASED ON (Check appropriate box(es).)
[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12-03-2011   Latest: 03-07-2012
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

In October 2008, I was hired by the above-named employer as an Administrative Assistant. During my employment I have been subjected to an environment that is hostile to females and African-Americans. For example, Wayne Shives, Trustee, always makes comments about my breasts whenever he sees me and Jerry Cook, Administrator, always has porn on his computer for others to see. Additionally, Dennis Jenkins, CPA, refers to workers from the IRS with the phrase "Nigger Monkey". I have made complaints but I continue to be subjected to a hostile environment.

I believe that I have been discriminated and retaliated against due to my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED MAY 29 2012 EEOC-ATDO

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

May 29, 2012 — Janet Adams, Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)